**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

CASE NO.: ____________________

POPEYES LOUISIANA KITCHEN, INC.,

Plaintiff,

vs.

PSP-PLC 12, LLC; PSP-PLC 13, LLC;
PSP-PLC 15, LLC; RICK FISHER; and
PATRICIA FISHER,

Defendants.
________________________________________/

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiff Popeyes Louisiana Kitchen, Inc. ("Popeyes") sues Defendants PSP-PLC 12, LLC ("PSP 12"), PSP-PLC 13, LLC ("PSP 13"), PSP-PLC, 15, LLC ("PSP 15"), Rick Fisher ("R. Fisher") and Patricia Fisher ("P. Fisher") (PSP 12, PSP 13, PSP 15, R. Fisher and P. Fisher shall be referred to collectively as "Defendants") and states:

**THE PARTIES**

1. Plaintiff Popeyes is a Minnesota corporation with its principal place of business in Miami, Florida.

2. Defendant R. Fisher is a citizen and resident of, and domiciled in, the Commonwealth of Virginia.

3. Defendant P. Fisher is a citizen and resident of, and domiciled in, the Commonwealth of Virginia.

4. Defendant PSP 12 is a Delaware limited liability company with its principal place of business in North Carolina. R. Fisher and P. Fisher are the sole members of PSP 12.

5. Defendant PSP 13 is a Delaware limited liability company with its principal place of business in the Commonwealth of Virginia. R. Fisher and P. Fisher are the sole members of PSP 13.

6. Defendant PSP 15 is a Delaware limited liability company with its principal place of business in North Carolina. R. Fisher and P. Fisher are the sole members of PSP 15.

**JURISDICTION AND VENUE**

7. Popeyes operates and franchises restaurants throughout the world, including the United States. Founded over twenty-five years ago, Popeyes now has more than 2,700 franchised restaurants in the world.

8. Popeyes' franchise operations are conducted and supervised from its world headquarters located in Miami, Florida. Popeyes, PSP 12, PSP 13, PSP 15, R. Fisher and P. Fisher, separately, have carried on a continuous course of direct communications by mail, e-mail and by telephone through Popeyes' headquarters in Miami, Florida.

9. The course of dealing between Popeyes and its franchisees, including PSP 12, PSP 13, PSP 15, R. Fisher and P. Fisher, shows that decision-making authority is vested in Popeyes' headquarters in Miami, Florida.

10. PSP 12, PSP 13, PSP 15, R. Fisher and P. Fisher have each separately breached contracts which were to be performed in Florida due to their failure to operate in accordance with Popeyes's standards and their failure to cease the use of the POPEYES® trademarks and system after their franchise agreement was terminated or their abandonment of the franchise agreements and restaurants. These breaches have caused damage to Popeyes at its headquarters in Miami, Florida.

11. This Court has jurisdiction over this action based upon:

(a) Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331,

1337, and 1338(a), for the claims arising out of Defendants' violations of Sections 32, 43(a) and 44 of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and 1126; and

(b) 28 U.S.C. § 1338(b), and the doctrine of supplemental jurisdiction as codified in 28 U.S.C. § 1367, for the claims arising out of Defendants' breaches of contracts and common law unfair competition.

12. Venue is also proper in the Southern District of Florida pursuant to the forum selection clauses agreed to by the parties in their written agreements. In the parties' agreements, which include Florida choice-of-law provisions and provisions stating that Popeyes may file suit against Defendants in the United States District Court for the Southern District of Florida, Defendants consented to venue being in the Southern District of Florida. The parties' agreements also involved consideration of not less than $250,000 and bear a substantial relationship to Florida, where Popeyes is headquartered.

**THE POPEYES MARKS**

13. To identify the source, origin and sponsorship of Popeyes' facilities, products, and services, Popeyes has extensively employed, caused to be advertised and publicized throughout the United States (and elsewhere) certain distinctive symbols as trademarks and service marks (the "Marks"). Popeyes owns and was the first to adopt and use the Marks as trademarks and service marks and all right, title and interest in and to the Marks and the design, decor and image of POPEYES® restaurants remains vested solely in Popeyes in Miami, Florida.

14. Popeyes operates and franchises POPEYES® restaurants using the Marks on signs, menu boards, posters, uniforms, packaging, cups and other items in advertising to the public through television, print media and the internet.

15. Set forth below is an abbreviated listing of the Marks registered to Popeyes in the United States Patent and Trademark Office:

| Trademark | Status | Application Number | Application Date | Registration Number | Registration Date | Class |
|---|---|---|---|---|---|---|
| LOVE THAT CHICKEN | Registered | 88/915690 | 05/14/2020 | 6444181 | 08/10/2021 | 43 |
| LOVE THAT CHICKEN FROM POPEYES | Registered | 73/162712 | 03/17/1978 | 1257959 | 11/15/1983 | 42 |
| LOVE THAT CHICKEN! (Stylized) | Registered | 73/162713 | 03/17/1978 | 1116753 | 04/17/1979 | 42 |
| P LOUISIANA KITCHEN Seal | Registered | 77/506282 | 06/24/2008 | 3681087 | 09/08/2009 | 29, 43 |
| POPEYES | Registered | 73/029940 | 08/19/1974 | 1021254 | 09/23/1975 | 42 |
| POPEYES | Registered | 73/052658 | 05/19/1975 | 1030944 | 01/20/1976 | 29 |
| POPEYES | Registered | 88/883839 | 04/23/2020 | 6399724 | 06/29/2021 | 29, 30, 35, 43 |
| POPEYES | Registered | 73/162707 | 03/17/1978 | 121096 | 06/26/1979 | 29 |
| POPEYES | Registered | 73/162627 | 03/17/1978 | 1121699 | 07/10/1979 | 30 |
| POPEYES | Registered | 73/766279 | 11/29/1988 | 1552225 | 08/15/1989 | 35 |
| POPEYES (Stylized Standing Letters) (Color) | Registered | 90/605817 | 03/26/2021 | 6860748 | 09/27/2022 | 43 |
| POPEYES (Stylized) | Registered | 73/361550 | 04/26/1982 | 1267567 | 02/21/1984 | 29, 30, 42 |
| POPEYES LOUISIANA KITCHEN & Design | Registered | 77/506242 | 06/24/2008 | 3681086 | 09/08/2009 | 29, 43 |
| POPEYES LOUISIANA KITCHEN (Standing Lockup) (Color) | Registered | 90/605835 | 03/26/2021 | 6860749 | 09/27/2022 | 43 |

16. The registrations of the Marks are currently in full force and effect, and Popeyes has given notice to the public of the registration of the Marks as provided in 15 U.S.C. § 1111.

17. Pursuant to franchise agreements between Popeyes and its franchisees, including PSP 12, PSP 13 and PSP 15, Popeyes grants its franchisees a limited license and authority to use and display the Marks, but only in the manner prescribed by Popeyes. In no event is a franchisee authorized to use the Marks after the expiration or termination of its franchise. Such unauthorized use is expressly prohibited under the terms of all Popeyes franchise agreements.

18. Popeyes and its franchisees have spent many millions of dollars in the United States and abroad advertising and promoting POPEYES® restaurants, services and products.

19. The substantial investment made in the Marks has resulted in valuable good will for the Marks in the United States and elsewhere and for the restaurants, products and services bearing those marks. Popeyes' products and services have been met with popular approval and, as a result of Popeyes' extensive sales, advertising, promotion and publicity, the public throughout the world is familiar with the Marks. The products and services associated with the Marks are understood by the public to be produced, marketed, sponsored, supplied by and/or affiliated with Popeyes.

## THE POPEYES SYSTEM

20. Popeyes has developed a comprehensive restaurant operating system ("System") for all Popeyes' franchisees worldwide in order to protect the image of POPEYES® restaurants and to ensure uniform, high-quality standards. The detailed specifications and procedures of the System are set forth in Popeyes' Operating Standards Manual (the "OPS Manual").

21. Every Popeyes franchisee is required by its franchise agreement to operate its franchise in accordance with the OPS Manual. The OPS Manual sets forth in detail the mandatory Popeyes' restaurant operating standards, specifications and procedures, including rules governing areas such as food preparation, handling, cleanliness, health, sanitation, quality and speed of

service. In addition to these strict quality, service and cleanliness requirements, the OPS Manual prescribes specified training procedures to ensure that these requirements are met. The OPS Manual is a confidential Popeyes document which a franchisee is permitted to have only during the term of the franchise agreement.

22. Popeyes offers a broad range of services to its franchisees in order to monitor and assist a franchisee's compliance with these standards. This enables Popeyes to safeguard the integrity of POPEYES® restaurants, the System and the Marks.

23. Integral to Popeyes' compliance and assistance program are periodic inspections and consultations undertaken by personnel specially trained to observe and advise in all areas of restaurant operating procedure. Each POPEYES® Restaurant Franchise Agreement confers upon Popeyes the right to enter the restaurant premises to perform this vital function.

24. As a result of its substantial expenditures of money and effort in developing and implementing the System, Popeyes has established a high reputation and a positive image with the public as to the quality of products and services available at POPEYES® restaurants, which reputation and image have been, and continue to be, valuable assets of Popeyes. Popeyes strives to maintain that reputation through its careful selection of authorized franchise owners, facilities and locations, and its careful supervision over the manner and quality of its restaurant service.

## POPEYES' AGREEMENTS WITH DEFENDANTS

### A. The Asheville Agreements

25. PSP 12 owned and operated a restaurant as a franchised POPEYES® restaurant located at 275 Smokey Park Highway, Asheville, North Carolina 28806 (the "Asheville Restaurant").

26. PSP 12 owned and operated the Asheville Restaurant using the System and the Marks in accordance with the terms and conditions of a franchise agreement dated November 7,

2020 (the “Asheville Franchise Agreement”). A copy of the Asheville Franchise Agreement is attached as Exhibit “A.”

27. Under the terms of the Asheville Franchise Agreement, PSP 12 was required to operate the Asheville Restaurant and pay royalties and other amounts to Popeyes throughout the entirety of the Asheville Franchise Agreement’s 20-year term.

28. Pursuant to a written guaranty (the “Asheville Guaranty”) executed in connection with PSP 12’s execution of the Asheville Franchise Agreement, R. Fisher and P. Fisher, jointly and severally, both unconditionally and irrevocably guaranteed the payment and performance of any and all obligations of PSP 12 under the Asheville Franchise Agreement. The Asheville Guaranty is attached as Exhibit “B.”

**B. The Mauldin Agreements**

29. PSP 13 owned and operated a restaurant which is the subject of this lawsuit as a franchised POPEYES® restaurant located at 200 South Main Street, Mauldin, South Carolina 29662 (the “Mauldin Restaurant”).

30. PSP 13 owned and operated the Mauldin Restaurant using the System and the Marks in accordance with the terms and conditions of a franchise agreement dated February 19, 2021 (the “Mauldin Franchise Agreement”). A copy of the Mauldin Franchise Agreement is attached as Exhibit “C.”

31. Under the terms of the Franchise Agreements, PSP 13 was required to operate and maintain the Mauldin Restaurant in conformity and compliance with Popeyes’ standards and specifications.

32. The Franchise Agreements contains provisions regarding defaults and establishing the parties’ rights and obligations in the event of a default by PSP 13 thereunder. Upon termination

of the Mauldin Franchise Agreement, PSP 13 was obligated to, among other things, stop operating the Mauldin Restaurant using the Marks, to de-identify and to comply with other post-term covenants.

33. Pursuant to a written guaranty (the "Mauldin Guaranty") executed in connection with PSP 13's execution of the Mauldin Franchise Agreement, R. Fisher and P. Fisher, jointly and severally, both unconditionally and irrevocably guaranteed the payment and performance of any and all obligations of PSP 13 under the Mauldin Franchise Agreement. The Mauldin Guaranty is attached as Exhibit "D."

**C. The Canton Agreements**

34. PSP 15 owned and operated a restaurant as a franchised POPEYES® restaurant located at 701 Champion Drive, Canton, North Carolina 28716 (the "Canton Restaurant").

35. PSP 15 owned and operated the Canton Restaurant using the System and the Marks in accordance with the terms and conditions of a franchise agreement dated August 2, 2021 (the "Canton Franchise Agreement"). A copy of the Canton Franchise Agreement is attached as Exhibit "E."

36. Under the terms of the Canton Franchise Agreement, PSP 15 was required to operate the Canton Restaurant and pay royalties and other amounts to Popeyes throughout the entirety of the Canton Franchise Agreement's 20-year term.

37. Pursuant to a written guaranty (the "Canton Guaranty") executed in connection with PSP 15's execution of the Canton Franchise Agreement, R. Fisher and P. Fisher, jointly and severally, both unconditionally and irrevocably guaranteed the payment and performance of any and all obligations of PSP 15 under the Canton Franchise Agreement. The Canton Guaranty is attached as Exhibit "F."

## DEFENDANTS' DEFAULTS AND TERMINATIONS

**A. Breaches of the Asheville Agreements**

38. PSP 12 breached the Asheville Franchise Agreement by abandoning the operation of the Asheville Restaurant without Popeyes' consent before the expiration of the Asheville Franchise Agreement's term. Additionally, PSP 12 has not complied with all of the Asheville Franchise Agreement's post-termination obligations. [have they de-identified, etc?]

39. As a result of PSP 12's breaches of the Asheville Franchise Agreement and R. Fisher and P. Fisher's breaches of the Asheville Guaranty, Popeyes has suffered damages that exceed $380,000.

**B. Breaches of the Mauldin Agreements**

40. PSP 13 breached the Mauldin Franchise Agreement and R. Fisher and P. Fisher breached the Mauldin Guaranty by failing to operate and/or maintain the Mauldin Restaurant in conformity and compliance with Popeyes' standards and specifications with regard to food safety and brand standards.

41. On three occasions between November of 2025 and July of 2026, Popeyes notified Defendants PSP 13, R. Fisher and P. Fisher of their defaults under the Mauldin Franchise Agreement and the Mauldin Guaranty, and demanded that they cure the defaults within the time periods set forth therein. Popeyes further notified Defendants PSP 13, R. Fisher and P. Fisher of Popeyes' right to terminate the Mauldin Franchise Agreement without affording them an opportunity to cure if they committed certain defaults more than once in any twelve-month period.

42. Despite being advised that any further defaults under the Mauldin Franchise Agreement may result in the termination of the Mauldin Franchise Agreement, during a September 15, 2026, inspection, Popeyes discovered that PSP 13 had again failed to operate and/or maintain

the Mauldin Restaurant in conformity with Popeyes' standards and specifications, constituting PSP 13's fourth default since November 24, 2025. Accordingly, on October 9, 2026, Popeyes informed PSP 13, R. Fisher and P. Fisher of the termination of the Mauldin Franchise Agreement effective October 9, 2026. Popeyes informed PSP 13, R. Fisher and P. Fisher that they were required to cease operation and otherwise comply with the post-termination obligations in the Mauldin Franchise Agreement.

43. Terminated franchisees are prohibited from identifying themselves as either a current or former POPEYES® franchisee, from displaying or using any of Popeyes' trade secrets, promotional materials, the Marks, or any mark confusingly similar. Terminated franchisees are further required, upon termination or expiration of their POPEYES® Restaurant Franchise Agreements, to immediately make such removals or changes in signs and the building as Popeyes shall request so as to effectively distinguish the building and premises from its former appearance and from any other POPEYES® Restaurant.

44. In violation of the Mauldin Franchise Agreement and the Mauldin Guaranty, Defendants R. Fisher, P. Fisher and PSP 13, continue to hold themselves out to the public as owning and operating a genuine and authorized POPEYES® Restaurant by continuing to display and/or use the Marks at the Mauldin Restaurant subsequent to the Mauldin Franchise Agreement's termination, and they have failed to de-identify the Mauldin Restaurant. In so doing, PSP 13, R. Fisher and P. Fisher are infringing upon the Marks and breaching their explicit obligations under the Mauldin Franchise Agreement and the Mauldin Guaranty.

45. Additionally, PSP 13, R. Fisher and P. Fisher have not returned the OPS Manuals and other operational manuals to Popeyes as required by the Mauldin Franchise Agreement and Mauldin Guaranty.

46. PSP 13, R. Fisher and P. Fisher have failed to tender to Popeyes or remove all POPEYES® signs, logos, menu boards, posters, translights, uniforms, plates, cups, tray liners, and other items bearing the Marks, name, symbols, or slogans, or which are otherwise identified with POPEYES® that are located at the Mauldin Restaurant.

47. PSP 13, R. Fisher and P. Fisher's continued display of the Marks or any items associated with the POPEYES® name, symbols, or slogans at the Mauldin Restaurant are without Popeyes' license or consent. Upon seeing the familiar Marks, through PSP 13 and Fisher's unauthorized display thereof, consumers will be deceived to conclude that the Mauldin Restaurant is sponsored or endorsed by Popeyes and bear the Marks pursuant to Popeyes' authority and permission. Such impressions will have a material influence on customers' purchasing decisions, as well as Popeyes' goodwill and reputation.

48. R. Fisher, through the operation of his company, PSP 13, and acting in his capacity as the Managing Owner and Managing Director of PSP 13, has actively and knowingly used the Marks following the termination of the Mauldin Franchise Agreement. R. Fisher directs and controls the operation of PSP 13 and the Mauldin Restaurant, and is responsible for marketing, which includes the unauthorized use of the Marks. R. Fisher actively and knowingly caused the unlawful use of the Marks and personally took part in the infringing use of the Marks through, among other things, his decision to continue using the Marks at the Mauldin Restaurant following the termination of the Mauldin Franchise Agreement.

49. P. Fisher, through the operation of her company, PSP 13, and acting in her capacity as a member of PSP 13, has actively and knowingly used the Marks following the termination of the Mauldin Franchise Agreement. P. Fisher directs and controls the operation of PSP 13 and the Mauldin Restaurant, and is responsible for marketing, which includes the unauthorized use of the

Marks. P. Fisher actively and knowingly caused the unlawful use of the Marks and personally took part in the infringing use of the Marks through, among other things, her decision to continue using the Marks at the Mauldin Restaurant following the termination of the Mauldin Franchise Agreement.

50. By reason of the foregoing, Popeyes has suffered damages, in an amount presently unknown yet substantial.

51. Popeyes will suffer serious, immediate, and irreparable harm if PSP 13's, R. Fisher's and P. Fisher's willful infringement of the Marks at the Mauldin Restaurant is not immediately enjoined. Popeyes' goodwill and reputation will suffer by virtue of the public's identification of Popeyes with the Mauldin Restaurant bearing its Marks.

52. PSP 13's, R. Fisher's and P. Fisher's display of the Marks at the Mauldin Restaurant poses an immediate threat to the distinct, exclusive image Popeyes has created at great expense for its franchisees. POPEYES® Restaurants, services, and products are known by the Marks which are emblematic of their distinctive source. POPEYES® Restaurants enjoy a special appeal to consumers which will be diluted by the existence of the infringing restaurant with products and services bearing the distinctive Marks. The intangible, but commercially indispensable, value that the POPEYES® Restaurants now enjoy will be severely undermined by the use and display of the Marks at the Mauldin Restaurant.

53. Popeyes has suffered damages well in excess of $100,000 as a result of the breach of the Mauldin Franchise Agreement and Mauldin Guaranty.

**C. Breaches of the Canton Agreements**

54. PSP 15 breached the Canton Franchise Agreement by abandoning the operation of the Canton Restaurant without Popeyes' consent before the expiration of the Canton Franchise Agreement's term.

55. As a result of PSP 15's breaches of the Canton Franchise Agreement and R. Fisher and P. Fisher's breaches of the Canton Guaranty, Popeyes has suffered damages that exceed $270,000.

56. PSP 12, PSP 13, PSP 15, R. Fisher and P. Fisher agreed in writing that in litigation to enforce the terms of the agreements between Popeyes and Defendants, Popeyes, as the prevailing party, shall be paid by Defendants all costs, including attorneys' fees, incurred as a result.

57. Popeyes has engaged the undersigned counsel and has agreed to pay counsel reasonable attorneys' fees for all services rendered in this action and otherwise in connection with enforcing the agreements between Popeyes and Defendants.

58. All conditions precedent to the institution of this action have been satisfied, discharged, excused and/or waived.

**COUNT I**
**LANHAM ACT INFRINGEMENT**
**AGAINST PSP 13, R. FISHER AND P. FISHER**

59. Popeyes re-alleges and incorporates Paragraphs 1 through 24, 29 through 33, 40 through 53 and 56 through 58 above as if fully set forth herein.

60. PSP 13's, R. Fisher's and P. Fisher's use of the Marks at the Mauldin Restaurant, as described above, constitute infringements of Popeyes' registered trademarks and service marks in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114.

**COUNT II**
**LANHAM ACT FALSE DESIGNATIONS**
**AGAINST PSP 13, R. FISHER AND P. FISHER**

61. Popeyes re-alleges and incorporates Paragraphs 1 through 24, 29 through 33, 40 through 53 and 56 through 58 above as if fully set forth herein.

62. PSP 13's, R. Fisher's and P. Fisher's use of the Marks at the Mauldin Restaurant, as described above, constitute false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

**COUNT III**
**COMMON LAW TRADEMARK INFRINGEMENT**
**AGAINST PSP 13, R. FISHER AND P. FISHER**

63. Popeyes re-alleges and incorporates Paragraphs 1 through 24, 29 through 33, 40 through 53 and 56 through 58above as if fully set forth herein.

64. PSP 13's, R. Fisher's and P. Fisher's use of the Marks at the Mauldin Restaurant, as described above, constitute unlawful trademark and service mark infringements under the common law.

**COUNT IV**
**COMMON LAW UNFAIR COMPETITION**
**AGAINST PSP 13, R. FISHER AND P. FISHER**

65. Popeyes re-alleges and incorporates Paragraphs 1 through 24, 29 through 33, 40 through 53 and 56 through 58above as if fully set forth herein.

66. PSP 13's, R. Fisher's and P. Fisher's use of the Marks at the Mauldin Restaurant, as described above, constitute unfair competition under the common law.

**COUNT V**
**BREACH OF ASHEVILLE FRANCHISE AGREEMENT**
**AGAINST PSP 12**

67. Popeyes re-alleges and incorporates Paragraphs 1 through 28, 38 through 39 and 56 through 58, above as if fully set forth herein.

68. PSP 12 breached the Asheville Franchise Agreement by abandoning the operation of the Asheville Restaurant without Popeyes' consent before the expiration of the Asheville Franchise Agreement's term. Additionally, PSP 12 has not complied with all of the Asheville Franchise Agreement's post-termination obligations.

69. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT VI**
**BREACH OF ASHEVILLE GUARANTY**
**AGAINST R. FISHER**

70. Popeyes re-alleges and incorporates Paragraphs 1 through 28, 38 through 39 56 through 58 and 68 through 69 above as if fully set forth herein.

71. PSP 12 breached the Asheville Franchise Agreement by abandoning the operation of the Asheville Restaurant without Popeyes' consent before the expiration of the Asheville Franchise Agreement's term.

72. Pursuant to the Asheville Guaranty, R. Fisher jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of PSP 12 to Popeyes under the Asheville Franchise Agreement should PSP 12 fail to perform such obligations.

73. The failure of R. Fisher to ensure PSP 12's compliance with its obligations under the Asheville Franchise Agreement constitutes a breach of the Asheville Guaranty.

74. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT VII**
**BREACH OF ASHEVILLE GUARANTY**
**AGAINST P. FISHER**

75. Popeyes re-alleges and incorporates Paragraphs 1 through 28, 38 through 39 56 through 58 and 68 through 69above as if fully set forth herein.

76. PSP 12 breached the Asheville Franchise Agreement by abandoning the operation of the Asheville Restaurant without Popeyes' consent before the expiration of the Asheville Franchise Agreement's term.

77. Pursuant to the Asheville Guaranty, P. Fisher jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of PSP 12 to

Popeyes under the Asheville Franchise Agreement should PSP 12 fail to perform such obligations.

78. The failure of P. Fisher to ensure PSP 12's compliance with its obligations under the Asheville Franchise Agreement constitutes a breach of the Asheville Guaranty.

79. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT VIII**
**BREACH OF MAULDIN FRANCHISE AGREEMENT**
**AGAINST PSP 13**

80. Popeyes re-alleges and incorporates Paragraphs 1 through 24, 29 through 33, 40 through 53 and 56 through 58 above as if fully set forth herein.

81. PSP 13 breached the Mauldin Franchise Agreement by failing to operate the Mauldin Restaurant in compliance with Popeyes' standards and specifications with regard to food safety and brand standards, despite demand.

82. PSP 13 has also been in default of the Mauldin Franchise Agreement more than two times within a single 12-month period.

83. Additionally, PSP 13 has not complied with the post-termination obligations in the Mauldin Franchise Agreement requiring, among other things, that PSP 13 immediately cease and desist from all use of the Marks at the Mauldin Restaurant.

84. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT IX**
**BREACH OF MAULDIN GUARANTY**
**AGAINST R. FISHER**

85. Popeyes re-alleges and incorporates Paragraphs 1 through 24, 29 through 33, 40 through 53, 56 through 58 and 81 through 84 above as if fully set forth herein.

86. PSP 13 breached the Mauldin Franchise Agreement by failing to operate and maintain the Mauldin Restaurant in compliance therewith.

87. PSP 13 has also breached the Mauldin Franchise Agreement because it has not complied with the post-termination obligations contained therein requiring, among other things, that it immediately cease and desist from all use of the Marks at the Mauldin Restaurant.

88. Pursuant to the Mauldin Guaranty, R. Fisher jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of PSP 13 to Popeyes under the Mauldin Franchise Agreement should PSP 13 fail to perform such obligations.

89. The failure of R. Fisher to ensure PSP 13's compliance with its obligations under the Mauldin Franchise Agreement constitutes a breach of the Mauldin Guaranty.

90. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT X**
**<u>BREACH OF MAULDIN GUARANTY</u>**
**<u>AGAINST P. FISHER</u>**

91. Popeyes re-alleges and incorporates Paragraphs 1 through 24, 29 through 33, 40 through 53, 56 through 58 and 81 through 84 above as if fully set forth herein.

92. PSP 13 breached the Mauldin Franchise Agreement by failing to operate and maintain the Mauldin Restaurant in compliance therewith.

93. PSP 13 has also breached the Mauldin Franchise Agreement because it has not complied with the post-termination obligations contained therein requiring, among other things, that it immediately cease and desist from all use of the Marks at the Mauldin Restaurant.

94. Pursuant to the Mauldin Guaranty, P. Fisher jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of PSP 13 to Popeyes under the Mauldin Franchise Agreement should PSP 13 fail to perform such obligations.

95. The failure of P. Fisher to ensure PSP 13's compliance with its obligations under the Mauldin Franchise Agreement constitutes a breach of the Mauldin Guaranty.

96. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT XI**
**BREACH OF CANTON FRANCHISE AGREEMENT**
**AGAINST PSP 15**

97. Popeyes re-alleges and incorporates Paragraphs 1 through 24, 34 through 37 and 54 through 58 above as if fully set forth herein.

98. PSP 15 breached the Canton Franchise Agreement by abandoning the operation of the Canton Restaurant without Popeyes' consent before the expiration of the Canton Franchise Agreement's term.

99. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT XII**
**BREACH OF CANTON GUARANTY**
**AGAINST R. FISHER**

100. Popeyes re-alleges and incorporates Paragraphs 1 through 24, 34 through 37, 54 through 58 and 98 through 99 above as if fully set forth herein.

101. PSP 15 breached the Canton Franchise Agreement by abandoning the operation of the Canton Restaurant without Popeyes' consent before the expiration of the Canton Franchise Agreement's term. Additionally, PSP 15 has not complied with all of the Canton Franchise Agreement's post-termination obligations.

102. Pursuant to the Canton Guaranty, R. Fisher jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of PSP 15 to Popeyes under the Canton Franchise Agreement should PSP 15 fail to perform such obligations.

103. The failure of R. Fisher to ensure PSP 15's compliance with its obligations under the Canton Franchise Agreement constitutes a breach of the Canton Guaranty.

104. These breaches have directly and proximately caused loss and damage to Popeyes.

**COUNT XIII**
**BREACH OF CANTON GUARANTY**
**AGAINST P. FISHER**

105. Popeyes re-alleges and incorporates Paragraphs through 24, 34 through 37, 54 through 58 and 98 through 99 above as if fully set forth herein.

106. PSP 15 breached the Canton Franchise Agreement by abandoning the operation of the Canton Restaurant without Popeyes' consent before the expiration of the Canton Franchise Agreement's term.

107. Pursuant to the Canton Guaranty, P. Fisher jointly, severally and irrevocably guaranteed the performance of, inter alia, each and every obligation and liability of PSP 15 to Popeyes under the Canton Franchise Agreement should PSP 15 fail to perform such obligations.

108. The failure of P. Fisher to ensure PSP 15's compliance with its obligations under the Canton Franchise Agreement constitutes a breach of the Canton Guaranty.

109. These breaches have directly and proximately caused loss and damage to Popeyes.

**DEMAND FOR ATTORNEYS' FEES AND COSTS**

The agreements at issue in this litigation provide that Defendants shall pay Popeyes all damages, costs and expenses, including reasonable attorneys' fees, incurred by Popeyes in connection with their enforcing. Popeyes hereby demands that it be reimbursed by Defendants for all costs and expenses (including attorneys' fees) relating to prosecution of this action.

**REQUEST FOR RELIEF**

WHEREFORE, Popeyes Louisiana Kitchen, Inc. demands judgment:

1. Against Defendants PSP-PLC 13, LLC, Rick Fisher and Patricia Fisher for preliminary and permanent injunctions enjoining Defendants and all persons acting on their behalf, in concert with, or under their control, from:

(a) manufacturing, packaging, distributing, selling, advertising, displaying, or promoting any product or service bearing any of the Marks, or any colorable imitation thereof at the Mauldin Restaurant;

(b) displaying or using any of the Marks to advertise or promote the sale of, or to identify, the Mauldin Restaurant, or any product or service provided therein; and

(c) making in any manner whatsoever any statement or representation, or performing any act, likely to lead members of the public to believe that Defendants PSP-PLC 13, LLC, Rick Fisher and Patricia Fisher, the Mauldin Restaurant and the products and services provided therein, are in any manner, directly or indirectly, associated, affiliated, or connected with, or licensed, sponsored, authorized, or approved by Popeyes to operate the Mauldin Restaurant.

2. Against Defendants PSP-PLC 13, LLC, Rick Fisher and Patricia Fisher for preliminary and permanent injunctions directing Defendants PSP-PLC 13, LLC, Rick Fisher and Patricia Fisher and all persons acting on their behalf, in concert with Defendants PSP-PLC 13, LLC, Rick Fisher and Patricia Fisher, or under their control, to:

(a) recall and deliver up to Popeyes all signs, banners, labeling, packaging, advertising, promotional, display and point-of-purchase materials from the Mauldin Restaurant which bears, or refers to, any of the Marks, or any colorable imitation of the Marks;

(b) recall and deliver up to Popeyes on all copies and editions of the OPS Manual that are in their actual or constructive, direct or indirect, possession, custody or control, including all supplements and addenda thereto and all other materials containing restaurant operating instructions, restaurant business practices, or plans of Popeyes that were used in connection with the operation of the Mauldin Restaurant;

(c) allow Popeyes, at a reasonable time, to enter the premises of the Mauldin

Restaurant and make whatever changes, including removal of tangible assets, that are necessary to distinguish the premises from its appearance as a POPEYES® Restaurant, and;

(d) account and pay over to Popeyes all gains, profits, and advantages derived by them from any trademark and service mark infringement, breach of contract, and unfair competition to the full extent provided for by Section 35 of the Lanham Act, 15 U.S.C. §1117 and by the controlling principles of common law.

3. Against Defendants PSP-PLC 13, LLC, Rick Fisher and Patricia Fisher for money damages, plus three times additional actual damages Popeyes has sustained by reason of their trademark and service mark infringement and unfair competition, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

4. Punitive damages against PSP-PLC 13, LLC, Rick Fisher and Patricia Fisher because of the willful nature of Defendants' actions;

5. Against PSP-PLC 13, LLC, Rick Fisher and Patricia Fisher for pre-judgment interest and Popeyes' reasonable attorneys' fees and costs incurred in protecting its rights in this action in accordance with the terms of the Mauldin Franchise Agreement and because of the willful nature of the infringement, pursuant to Section 35 of the Lanham Act, 15 U.S.C. §1117;

6. Against all Defendants for compensatory damages, lost profits, and attorneys' fees and costs against Defendants due to their breaches of the agreements;

7. An order directing Defendants Against Defendants PSP-PLC 13, LLC, Rick Fisher and Patricia Fisher for to file with the Court, and to serve on Popeyes's counsel within ten days after service of any injunction or order issued herein, or within such a reasonable time as the Court shall direct, a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with such injunction or order;

8. Against all Defendants for all costs, disbursements, and expenses of this action; and

9. All such other relief as this Court may deem just and proper.

Dated: November 5, 2026

Respectfully submitted,

*/s/ Aaron S. Blynn*

Michael D. Joblove, Esq.
Florida Bar No.: 354147
mjoblove@venable.com
Aaron S. Blynn, Esq.
Florida Bar No.: 073464
asblynn@venable.com
VENABLE LLP
801 Brickell Avenue
Suite 1500
Miami, Florida 33131
Telephone: (305) 349-2300
Facsimile: (305) 349-2310
*Attorneys for Popeyes Louisiana Kitchen, Inc.*